Filed 12/15/21  P. v. Melgoza CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>JOSE MELGOZA,<br><br>    Defendant and Appellant. | F081377<br><br>(Kern Super. Ct. No. BF148767A)<br><br>**OPINION** |

## THE COURT[*]

APPEAL from a judgment of the Superior Court of Kern County.  Michael E. Dellostritto, Judge.

Kyle Gee, under appointment by the Court of Appeal, for Defendant and Appellant.

Office of the Attorney General, Sacramento, California, for Plaintiff and Respondent.

-ooOoo-

---

[*] Before Levy, Acting P. J., Poochigian, J. and Franson, J.

# INTRODUCTION

In 2014, petitioner and appellant Jose Melgoza (Melgoza) was sentenced to an aggregate term of 50 years to life after being convicted of first degree premeditated murder (Pen. Code, §§ 187, subd. (a), 189))[1] with firearm and gang enhancements (§ 12022.53, subds. (d), (e)(1); § 186.22, subd. (b)). Based on the jury instructions and arguments, Melgoza was convicted as either the actual killer or a direct aider and abettor; the jury was not instructed on felony murder or the natural and probable consequences doctrine. In 2017, this court affirmed the judgment. (*People v. Melgoza* (F068797, May 17, 2016) [nonpub. opn.].)[2]

In 2019, Melgoza filed a petition for recall and resentencing based on the newly enacted provisions of section 1170.95, asserting he was not the actual killer, and he was convicted based on theories of felony murder and/or natural and probable consequences. The superior court appointed counsel, received additional briefing, and held a hearing on the petition. The court held Melgoza failed to set forth a prima facie case for relief

---

[1] All further statutory citations are to the Penal Code unless otherwise indicated.

[2] As will be discussed below, Melgoza's petition for recall asserted that he was not the actual killer of the victim. The prosecution's opposition contained a lengthy factual statement from this court's opinion. In determining whether there was a prima facie showing for relief, the superior court stated that it examined the record of defendant's conviction in reviewing and denying Melgoza's petition, a procedure that has since been authorized by the California Supreme Court. (*People v. Lewis* (2021) 11 Cal.5th 952, 970–971 (*Lewis*).)

*Lewis* acknowledged that appellate opinions "are generally considered to be part of the record of conviction. [Citation.]" (*Lewis, supra*, 11 Cal.5th at p. 972.) *Lewis* cautioned that "the probative value of an appellate opinion is case specific, and 'it is certainly correct that an appellate opinion might not supply all answers.' [Citation.] In reviewing any part of the record of conviction at this preliminary juncture, a trial court should not engage in 'factfinding involving the weighing of evidence or the exercise of discretion.' [Citation.] '[T]he prima facie bar was intentionally and correctly set very low.' " (*Ibid.*)

Given this background, we take judicial notice of the appellate record and this court's nonpublished opinion in *People v. Melgoza*, *supra*, F068797. The following factual statement is from this court's opinion. (Evid. Code, § 450, § 452, subd. (d), § 459; *In re W.R.* (2018) 22 Cal.App.5th 284, 286–287, fn. 2.)

because he was convicted as either the actual killer or a direct aider and abettor and denied his petition for recall and resentencing. Melgoza filed the instant notice of appeal from that ruling.

On appeal, his appellate counsel has filed a brief that summarizes the facts with citations to the record, raises no issues, and asks this court to independently review the record. (*People v. Wende* (1979) 25 Cal.3d 436.) We affirm.

**FACTS**

On the evening of September 22, 2012, Trinidad Ortiz was walking on Monterey Avenue in Kern County and a small black car stopped next to him. A witness later reported that Ortiz stood next to the passenger side of the car, and no one got out of the vehicle. The witness heard four or five gunshots, and the black car left the area. The witness called 911 and reported the black car stopped next to Ortiz, and he was shot. The witness did not see how many people were in the car and guessed there were two people inside because the victim was shot from the passenger side. The witness said the victim was looking back when he was shot. Ortiz was shot five times in the back and died from the wounds. There were nine-millimeter shell casings in the street near his body, along with a clear plastic bag containing a white substance of suspected narcotics. (*People v. Melgoza*, *supra*, F068797.)

The investigation focused on Melgoza and his half brother, George (Jorge) Chavez. Melgoza, Chavez, and Ortiz were members of the Colonia Bakers gang. The police obtained search warrants to wiretap cell phones linked to Melgoza and Ortiz. Melgoza's cell phone records placed him near the homicide scene at the time of the shooting. (*People v. Melgoza*, *supra*, F068797.)

In the days after the homicide, and prior to his arrest, Melgoza had several phone conversations with Elva Rayas, the mother of both Melgoza and his half brother. Rayas passed along messages to Melgoza from various people, encouraged Melgoza to claim a false alibi, discussed purchasing identification papers from another person that Melgoza

3.

could use, and suggested that Melgoza hide with relatives in Iowa.  (*People v. Melgoza*, *supra*, F068797.)

During one phone call, Melgoza told Rayas that he was using drugs again.  Rayas became upset and asked if he was using heroin, and Melgoza said yes.  (*People v. Melgoza*, *supra*, F068797.)

> " '[Rayas]:  [B]ut hopefully you get rid of that habit son … because we will mess up our own lives son … I can't believe all you were going through and you started to do that ...
>
> " '[Melgoza]:  I know … but I did …
>
> " '[Rayas]:  No, you need lots more experience … like Jorge … *how many times did I tell you guys [to] not carry a gun ...* remember … I told you too … you didn't listen … right?
>
> " '[Melgoza]:  *Since we went and killed that fool ... I put my gun away ... my gun is still put away ...*
>
> " '[Rayas]:  No more … no more … never again …
>
> " '[Melgoza]:  *My gun has not come out ... I want you to know and understand that even though I was all f[* *]ked up ...*  I still wanted to change and work and do whatever I could.' "  (*People v. Melgoza*, *supra*, F068797, italics added.)

As the investigation drew near Melgoza and Chavez, Melgoza called Jose Rizo, another member of the Colonia Bakers gang, and asked if he still had "the burner."  Rizo said yes.  Melgoza said, "[W]e are going to need to throw it away" because a homicide detective talked to his mother and said Melgoza was a suspect "in the death of that fool."  Rizo assured Melgoza that he had it "well hidden" in his house.  Melgoza said he would meet up with Rizo later and pick it up.  (*People v. Melgoza*, *supra*, F068797.)

Rizo was arrested and his house was searched.  The murder weapon was found inside a pillow.  (*People v. Melgoza*, *supra*, F068797.)  DNA samples were later taken from Melgoza, Chavez, and Rizo, and their profiles were compared with DNA tests conducted on the trigger slide and grips of that same handgun.  The DNA profile from the

gun had at least four contributors. Melgoza could not be excluded as a major contributor to the major portion of the DNA profile from the gun. Rizo and Chavez were excluded as possible contributors to the major portion of the DNA profile. (*Ibid*.)

Melgoza was arrested as he was planning to leave the state. (*People v. Melgoza*, *supra*, F068797.)

**Instructions**

Melgoza was charged with first degree premeditated murder with gang and firearm enhancements. The jury was instructed on first and second degree murder, express and implied malice, intent to kill, and premeditation. (*People v. Melgoza*, *supra*, F068797.) The jury was further instructed on direct aiding and abetting. CALCRIM No. 400 stated:

> " 'A person may be guilty of a crime in two ways. One, he or she may have directly committed the crime, and I will call that person the perpetrator. Two, he or she may have aided and abetted a perpetrator who directly committed the crime. A person is guilty of a crime whether he or she committed it personally or aided and abetted the perpetrator.' " (*People v. Melgoza*, *supra*, F068797.)

CALCRIM No. 401 defined aiding and abetting, and stated in relevant part:

> " 'To prove that the defendant is guilty of a crime on aiding and abetting that crime, the People must prove that, one, the perpetrator committed the crime. Two, the defendant knew that the perpetrator intended to commit the crime. Three, before or during the commission of the crime, the defendant intended to aid and abet the perpetrator in committing the crime. And, four, the defendant's words or conduct did, in fact, aid and abet the perpetrator's commission of the crime.
>
> " '*If someone aids and abets a crime, if he or she knows of the perpetrator's unlawful purpose, and he or she specifically intends and does, in fact, aid, facilitate, promote and encourage or instigate the perpetrator's commission of that crime. If all of these requirements are proved, the defendant does not need to actually have been present when the crime was committed to be guilty as an aider and abettor.*' " (*People v. Melgoza*, *supra*, F068797.)

5.

The jury also received CALCRIM No. 521, that Melgoza was being prosecuted for first degree murder under two theories: " 'One, the murder was willful, deliberate and premeditated. And, two, the murder was committed by shooting a firearm from a vehicle. Each theory of first degree murder has different requirements, and I will instruct you on both. You may not find the defendant guilty of first degree murder unless all of you agree that the People have proved the defendant committed murder, but all of you … do not need to agree on the same theory.' " (*People v. Melgoza*, *supra*, F068797.)

> " 'The defendant [is] guilty of first degree murder if the People have proved that he acted willfully, deliberately, and with premeditation. *The defendant acted willfully if he intended to kill.* The defendant acted deliberately if he carefully weighed the considerations for and against his choice and knowing the consequences decided to kill. [¶] The defendant acted with premeditation if he decided to kill before completing the act that caused death....' " (*People v. Melgoza*, *supra*, F068797, italics added.)

> As to the second theory of first degree murder, the jury was instructed:

> " 'The defendant is guilty of first degree murder if the People have proved that the defendant murdered *by shooting a firearm from a motor vehicle*. The defendant committed this kind of murder if, one, he shot a firearm from a motor vehicle. Two, he intentionally shot at a person who was outside the vehicle. And, three, he intended to kill that person.' " (*People v. Melgoza*, *supra*, F068797, italics added.)

The jury was not instructed on felony murder or any underlying felony offenses committed during the murder, or any target offenses for aiding and abetting based on the natural and probable consequences doctrine.

In closing argument, the prosecutor acknowledged it was not clear whether Melgoza was the gunman and/or the driver but argued Melgoza was in the car when Ortiz was killed, and he was guilty of first degree murder based on his statements in the wiretap conversations, his location based on the cell phone tower signals, and the DNA evidence on the murder weapon which excluded Chavez and Rizo but did not exclude Melgoza. (*People v. Melgoza*, *supra*, F068797.)

6.

**Convictions and sentence**

On November 12, 2013, the jury convicted Melgoza of first degree murder and found true the section 189 special allegation, that the crime " 'was done by one of the following means: A) willful, deliberate, and premeditated killing; H) discharge of a firearm from a motor vehicle, intentionally at another person outside the vehicle, with the intent to inflict death; within the meaning of … section 189, as alleged in the first count of the Information.' " (*People v. Melgoza*, *supra*, F068797.) Also, as to the murder conviction, the jury found true a gang enhancement and a firearm enhancement – that Melgoza was a principal in the offense, and, in the commission of the offense, at least one principal intentionally and personally discharged and personally used a firearm, and proximately caused death or great bodily injury, to a person other than an accomplice (§ 12022.53, subds. (d), (e)(1)). (*People v. Melgoza*, *supra*, F068797) Melgoza was also convicted of count 2, felon in possession of a firearm (§ 29800, subd. (a)(1)), with a gang enhancement; and count 3, active participation in a criminal street gang (§ 186.22, subd. (a)(1)). *People v. Melgoza*, *supra*, F068797.)

On January 22, 2014, Melgoza was sentenced to 50 years to life, based on 25 years to life for count 1, murder, and a consecutive term of 25 years to life for the firearm enhancement, with concurrent terms for the other convictions and enhancements. (*People v. Melgoza*, *supra*, F068797.)

**Appellate opinion**

On May 17, 2016, this court affirmed Melgoza's convictions and sentence in *People v. Melgoza*, *supra*, F068797. Melgoza's primary appellate argument was that the jury instructions on aiding and abetting for first degree murder were "at best, ambiguous" on the specific intent required to convicted Melgoza of murder based on aiding and abetting. Melgoza asserted the instructions allowed the jury to convict him of first degree murder as either the gunman or an aider and abettor without proof that he personally premeditated and deliberated, or that he personally intended that a shooting from the car

would kill the victim.  (*Ibid.*)

In rejecting this argument, this court extensively addressed aiding and abetting, and the instructions that were given.  (*People v. Melgoza*, *supra*, F068797.)  This court held the jury was correctly instructed on the specific intent and premeditation required to be convicted as an aider and abettor of first degree murder.  (*Ibid.*)

> " '[A]n aider and abettor of a specific intent crime shares the perpetrator's specific intent when he or she knows of the perpetrator's criminal purpose and aids, promotes, encourages, or instigates the perpetrator with the intent of encouraging or facilitating the commission of the crime.  [Citations.]' (*People v. Houston* (2012) 54 Cal.4th 1186, 1224.)  [*People v.*] *Beeman's* [(1984) 35 Cal.3d 547, 560] definition of aiding and abetting, and what it means to share the perpetrator's specific intent, has repeatedly been approved, and CALCRIM No. 401 adequately conveys those principles. (*People v. Houston*, *supra*, 54 Cal.4th at p. 1224; *People v. Prettyman* (1996) 14 Cal.4th 248, 259; *People v. Marshall* (1997) 15 Cal.4th 1, 40.) 'CALCRIM No. 401 clearly provides that knowledge that the perpetrator intends to commit the crime is only one of the four elements for aiding and abetting liability.  If the jury found mere knowledge alone, by the terms of CALCRIM No. 401, that would be insufficient to establish aiding and abetting liability.  This point is even emphasized by the portion of the instruction that reads as follows:  "Someone *aids* and *abets* a crime if he or she knows of the perpetrator's unlawful purpose and he or she specifically intends to, and does in fact, aid, facilitate, promote, encourage, or instigate the perpetrator's commission of that crime."  (CALCRIM No. 401.)' (*People v. Stallworth* (2008) 164 Cal.App.4th 1079, 1103−1104, italics in original.)  [¶] … [¶]
>
> " 'In this case, the jury received CALCRIM Nos. 401 and 521, regarding the necessity of finding [Melgoza] acted willfully, deliberately and with premeditation if he intended to kill.  By finding [Melgoza] guilty of first degree murder, the jury necessarily found that he had acted willfully and with the intent to kill.  Thus, although it was unknown whether he was an actual perpetrator or an aider and abettor, … the entirety of the court's instructions did not relieve the jury, under the court's other instructions, of finding [Melgoza] had the intent to kill at the time of the murder of Ortiz.' " (*People v. Melgoza*, *supra*, F068797.)

## **SENATE BILL NO. 1437**

The instant appeal involves Melgoza's petition for recall and resentencing filed pursuant to Senate Bill No. 1437 (2017–2018 Reg. Sess.) (Senate Bill 1437), which became effective on January 1, 2019, and "was enacted to 'amend the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, *to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill*, or was not a major participant in the underlying felony who acted with reckless indifference to human life.' [Citation.] Substantively, Senate Bill 1437 accomplishes this by amending section 188, which defines malice, and section 189, which defines the degrees of murder, and as now amended, addresses felony murder liability." (*People v. Martinez* (2019) 31 Cal.App.5th 719, 723 (*Martinez*), italics added; *People v. Gentile* (2020) 10 Cal.5th 830, 842 (*Gentile*).)

Senate Bill 1437 added a crucial limitation to section 188's definition of malice for purposes of murder: "Except as stated in subdivision (e) of Section 189, in order to be convicted of murder, a principal in a crime shall act with malice aforethought. *Malice shall not be imputed to a person based solely on his or her participation in a crime*." (§ 188, subd. (a)(3), italics added.) Section 189, subdivision (e) was amended to state that with respect to a participant in the perpetration or attempted perpetration of a felony listed in section 189, subdivision (a), in which a death occurs – that is, as to those crimes that provide the basis for the charge of first degree felony murder – that the individual is liable for murder "only if one of the following is proven: [¶] (1) The person was the actual killer. [¶] (2) *The person was not the actual killer, but, with the intent to kill, aided, abetted, counseled, commanded, induced, solicited, requested, or assisted the actual killer in the commission of murder in the first degree*. [¶] (3) The person was a major participant in the underlying felony and acted with reckless indifference to human life, as described in subdivision (d) of Section 190.2." (§ 189, subd. (e), italics added.)

9.

"Senate Bill 1437 also add[ed] … section 1170.95, which allows those 'convicted of felony murder or murder under a natural and probable consequences theory … [to] file a petition with the court that sentenced the petitioner to have the petitioner's murder conviction vacated and to be resentenced on any remaining counts .…' [Citation.]" (*Martinez, supra*, 31 Cal.App.5th at p. 723.)

"An offender may file a petition under section 1170.95 where all three of the following conditions are met: '(1) A complaint, information, or indictment was filed against the petitioner that allowed the prosecution *to proceed under a theory of felony murder or murder under the natural and probable consequences doctrine*[;] [¶] (2) The petitioner was convicted of first degree or second degree murder following a trial or accepted a plea offer in lieu of a trial at which the petitioner could be convicted for first degree or second degree murder[;] [¶] [and] (3) The petitioner could not be convicted of first or second degree murder because of changes to Section 188 or 189 made effective January 1, 2019.' [Citation.]" (*Martinez, supra*, 31 Cal.App.5th at p. 723, italics added.)

"A trial court that receives a petition under section 1170.95 'shall review the petition and determine if the petitioner has made a prima facie showing that the petitioner falls within the provisions of this section.' [Citation.]" (*Martinez, supra*, 31 Cal.App.5th at p. 723.)

To demonstrate prejudice from the denial of a section 1170.95 petition before the issuance of an order to show cause, the petitioner must show it is reasonably probable that, absent error, his or her petition would not have been summarily denied without an evidentiary hearing. (*Lewis, supra*, 11 Cal.5th at pp. 972–974.)

## MELGOZA'S PETITION

On May 13, 2019, Melgoza filed a petition in the Superior Court of Kern County, *in propria persona*, for recall and resentencing of his first degree murder conviction and sentence pursuant to section 1170.95. Melgoza used a preprinted form and checked boxes to indicate he was "not the actual killer," and he did not, "with the intent to kill,

aid, abet, counsel, command, induce, solicit, request, or assist the actual killer in the commission of the murder in the first degree." He also checked boxes to indicate he was convicted of "1st or 2nd degree murder pursuant to the felony murder rule or the natural and probable consequences doctrine," and he "could not be convicted of 1st or 2d degree murder because of changes made to Penal Code §§ 188 and 189," effective January 1, 2019. Melgoza requested appointment of counsel.

On May 17, 2019, the court appointed the public defender's office to represent Melgoza.

**The People's opposition**

On May 22, 2020, the prosecution filed opposition to Melgoza's petition, and recited the factual statement from this court's unpublished opinion. The prosecution argued that Senate Bill 1437 only applied to an accomplice who was not the actual killer "or without the requisite specific intent to kill as an aider and abettor." Instead, Melgoza was "an aider and abettor who acted with an intent to kill," and he was convicted of first degree murder with a true finding of acting with premeditation and deliberation pursuant to section 189. The prosecution cited the conclusion in this court's opinion that based on the instructions, "the jury necessarily found that he had acted willfully and with the intent to kill. Thus, although it was unknown whether he was an actual perpetrator or an aider and abettor … the entirety of the court's instructions did not relieve the jury … of finding [Melgoza] had the intent to kill at the time of the murder…."

The prosecution further argued Melgoza had the intent to kill either as the direct perpetrator or the aider and abettor, and he remained culpable despite the amendments enacted by Senate Bill 1437, citing his statements to his mother on the wiretap, " '*Since we went and killed that fool … I put my gun away … my gun is still put away*….' "

Finally, the prosecution noted that Melgoza's petition contained multiple inaccurate statements that were contrary to the jury's verdict because he was not prosecuted or convicted under theories of felony murder or natural and probable

11.

consequences, and the jury "necessarily found [he] acted willfully and with the intent to kill."[3]

**Melgoza's reply**

On June 10, 2020, Melgoza's counsel filed a reply to the People's opposition, and stated that Melgoza was submitting the matter based on his declaration in the petition for recall that "he was not the killer."

**Hearing on the petition**

On June 11, 2020, the court held a hearing as to whether Melgoza made a prima facie showing for relief under section 1170.95.

The prosecutor argued Melgoza was convicted as either the actual killer or a direct aider and abettor. The prosecutor further argued Melgoza's petition raised allegations that were not supported by the record, such as declaring he was convicted under the felony-murder rule. Defense counsel replied that Melgoza was not a legal scholar and did not understand some of the terms contained in the preprinted form that he submitted as his petition.

The court took the matter under submission and stated it would review the record and determine whether Melgoza "was the killer, he wasn't the killer or if he was an aider and abettor and he had the intent to kill and if he was a major participant."

**The court's denial of the petition**

On June 18, 2020, the court denied Melgoza's petition and found he failed to state a prima facie case for relief. The court stated it had reviewed the petition, opposition, and reply, and also "a significant portion of the case file, including but not limited to the Jury Instructions and the Appellate Opinion (F068797)."

---

[3] The prosecution separately moved to dismiss the petition and asserted Senate Bill 1437 was unconstitutional. The trial court denied the motion on this ground and found Senate Bill 1437 was constitutional.

12.

"[Melgoza] has failed to make a prima facie showing that he is entitled to resentencing under P.C.§ 1170.95. [Melgoza] was not prosecuted under a felony-murder theory or under the natural and probable consequences doctrine. He was prosecuted and convicted of first-degree murder under a theory of either being the actual killer or an aider and abettor with the specific intent to kill. Under the changes to P.C. § 189, effective January 1, 2019, he could now still be convicted of first-degree murder."

On July 1, 2020, Melgoza filed the instant notice of appeal from the court's denial of his petition for recall and resentencing.

## DISCUSSION

As noted above, Melgoza's counsel has filed a *Wende* brief with this court. The brief also includes the declaration of appellate counsel indicating that Melgoza was advised he could file his own brief with this court. By letter on September 1, 2020, we invited Melgoza to submit additional briefing. He has failed to do so.[4]

The court properly denied Melgoza's petition. While Senate Bill 1437 eliminated natural and probable consequences liability for murder as it applies to aiding and abetting (*Lewis, supra*, 11 Cal.5th at p. 957), a defendant convicted of murder for *directly* aiding and abetting that offense is ineligible for resentencing under section 1170.95 because liability stems from the defendant's own mental state; it is not dependent on imputed malice under the felony murder rule or the natural and probable consequences doctrine. (*People v. Chiu* (2014) 59 Cal.4th 155, 167 (*Chiu*) [a direct aider and abettor "acts with the mens rea required for first degree murder"]; *People v. McCoy* (2001) 25 Cal.4th 1111,

___

[4] A series of appeals from the denials of section 1170.95 petitions are pending before the California Supreme Court, where the appellate courts therein found the procedures set forth in *Wende* are not constitutionally compelled if a criminal defendant's appeal is not his or her initial appeal of right. Accordingly, if a defendant's counsel files a brief indicating [he or] she has been unable to identify any arguable appellate issues and, after notice, the defendant does not exercise his or her right to file a supplemental brief, we presume the order appealed from is correct and dismiss the appeal as abandoned. (*People v. Delgadillo* (Nov. 18, 2020, B304441) [nonpub. opn.], review granted, February 17, 2021, S266305.) We will follow the *Wende* review procedures in section 1170.95 cases pending further ruling by the Supreme Court.

1118 [a direct aider and abettor must necessarily "know and share the murderous intent of the actual perpetrator"].)

In Melgoza's case, the jury was not instructed on the felony-murder rule or a predicate felony that could have served as the basis for felony murder. (See, e.g., *Gentile*, *supra*, 10 Cal.5th at p. 848.) The jury was not instructed on the natural and probable consequence doctrine, or any target crime upon which murder based on a natural and probable consequences theory could be predicated. The jury thus was not permitted to convict Melgoza under an imputed malice theory eliminated by Senate Bill 1437. (See, e.g., *Chiu*, *supra*, 59 Cal.4th at pp. 160–161, partially superceded by Senate Bill 1437 as explained in *Lewis, supra*, 11 Cal.5th at p. 959, fn. 3; cf. *People v. Prettyman*, *supra*, 14 Cal.4th at p. 271; CALCRIM Nos. 402, 403.)

Instead, the jury was instructed on direct aiding and abetting for first degree murder, which required the prosecution to prove the Melgoza, as the aider and abettor, knew and shared the murderous intent of the actual perpetrator, actually aided or encouraged the commission of the murder, and he had to act with the requisite premeditation. (*Gentile, supra*, 10 Cal.5th at p. 850; *Chiu, supra*, 59 Cal.4th at p. 167, CALCRIM Nos. 401, 521.)

Senate Bill 1437 eliminated murder convictions based on imputed malice, when a person aided and abetted a nonhomicide crime that resulted in murder, and the natural and probable consequences doctrine allowed him or her to be convicted without personally possessing malice aforethought. (*Gentile, supra*, 10 Cal.5th at p. 845.) Senate Bill 1437 does not eliminate direct aiding and abetting liability for murder because a direct aider and abettor to murder must personally possess intent to kill and malice aforethought. (*People v. McCoy*, *supra*, 25 Cal.4th at p. 1118; *Gentile, supra,* 10 Cal.5th at p. 848.)[5]

---

[5] Our analysis is based on the version of section 1170.95 presently in effect. The Legislature recently passed, and the Governor signed, a bill amending section 1170.95.

After independent review of the record, we find that no reasonably arguable factual or legal issues exist.

## **DISPOSITION**

The trial court's denial of Melgoza's petition for recall and resentencing is affirmed.

---

(Sen. Bill No. 775 (2021–2022 Reg. Sess.).)  The amendments are not yet effective (Cal. Const., art. IV, § 8, subd. (c)(1)) and, in any event, would not alter our analysis.